IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PATRICK TAKEUCHI, | ) | CIV. NO. 14-00299 JMS-KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION TO DISMISS, OR IN THE |
| vs. | ) | ALTERNATIVE, FOR SUMMARY |
| | ) | JUDGMENT, DOC. NO. 39 |
| JOHN M. McHUGH, | ) | |
| Secretary of the Army, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, DOC. NO. 39

## I. INTRODUCTION

Plaintiff Patrick Takeuchi ("Plaintiff"), proceeding pro se, asserts that the United States Army ("Army") discriminated against him on the basis of his gender after terminating him for failing a random drug test for the second time. Specifically, Plaintiff is suing John M. McHugh, Secretary of the Army ("Defendant"), pursuant to Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, for "employment discrimination and wrongful termination." Doc. No. 12, Am. Compl. at 1.

Currently before the court is Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Motion").  Doc. No. 39.  Based on the following, the court GRANTS the Motion.

## II.  <u>BACKGROUND</u>

### A.   **Factual Background**

Plaintiff was employed by the Army as a Medical Technician at Tripler Army Medical Center ("Tripler") in Honolulu, Hawaii at all times relevant to this lawsuit.  Doc. No. 40, Def.'s Concise Statement of Facts ("CSF") ¶ 1.[1]  As a Medical Technician at Tripler, Plaintiff was subject to random drug testing.  *Id.* And, per Army Regulations, "[i]nitiation of removal from Federal Service is required after a second finding that the employee has used illegal drugs." *Id.* ¶ 15.

Plaintiff tested positive for amphetamines and methamphetamines for the first time on January 25, 2006.  *Id.* ¶ 6.  Following the positive drug test, Plaintiff was allowed to continue working at Tripler but he was referred to a rehabilitation program with Kaiser Permanente Hawaii.  *Id.* ¶ 7.

From 2006 through 2010, Plaintiff's employment with Tripler was relatively uneventful.  Beginning in 2011, however, Tripler counseled Plaintiff on numerous occasions for mislabeling lab samples and being repeatedly tardy to

---

[1]  When referencing undisputed facts, the court cites to the Defendant's CSF, Doc No. 40.

work.  *Id.* ¶¶ 8-9.  Accordingly, on January 12, 2012, Plaintiff's supervisor, Rosalie

Dotson, rated Plaintiff as "unsuccessful" for 2011 and put Plaintiff on a

Performance Improvement Plan ("PIP").  *Id.* ¶ 10.

On April 16, 2012, Plaintiff was subjected to a random drug test.  *Id.* ¶

12.  In early May 2012, Dr. Jerome Cooper informed Plaintiff that he had tested

positive for amphetamines and methamphetamines and offered him the opportunity

to request a retest.  *Id.* ¶ 13.   Specifically, Plaintiff was instructed that he had 72

hours to indicate that he wanted to have his original specimen retested by a

different laboratory.  *Id.* ¶ 14.  Defendant maintains that Plaintiff failed to request a

retest.  *Id*.  By contrast, Plaintiff asserts that, on May 4, 2012, he requested a retest

within the 72 hour time limit and that his request was denied.  *See* Doc. No. 12,

Am. Compl. at 2.[2]

On May 11, 2012, Ms. Dotson issued a charge proposing that Plaintiff

be terminated in light of his second positive drug test.  Doc. No. 40, Def.'s CSF ¶

15.  In her memo, Ms. Dotson indicated that the reason she was

---

[2]  In support of Plaintiff's assertion, he offers a cell phone record indicating that he called a 1-800 number for two minutes on May 4, 2012.  *See* Doc. No. 12-7, Pl.'s Ex. C to Am. Compl. Plaintiff claims that the 1-800 number was the number he was instructed to call if he desired a retest, but neither party offers any evidence that this 1-800 number was, in fact, the number Plaintiff was directed to call.  Nonetheless, for the purpose of this motion, the court accepts Plaintiff's assertion as true.

proposing Plaintiff's termination was because, in accordance with Army Regulations, "initiation of removal from Federal Service is required after a second finding that the employee has used illegal drugs."  Doc. No. 40, Def.'s Ex. 4 ("Notice of Proposed Removal").  Ms. Dotson further indicated that, "[a]lthough not a basis for this proposed action, in determining the appropriate penalty," she took into consideration the fact that Plaintiff's numerous performance issues preceding Tripler's second finding that Plaintiff had used illegal drugs. Specifically, Ms. Dotson took into consideration the following:

> a.   On 24 Jun 11, [Plaintiff was] counseled for 3 incidents of mislabeling samples causing the report of erroneous microbiology culture and HCG qualitative results.
>
> b.   On 8 Sep 11, [Plaintiff was] counseled on incorrectly processing . . . specimens . . . On 1 Sep 11, [Plaintiff's] inattentiveness caused the lost [sic] of parts (calibration Key (sic)) on a critically used pipette.
>
> c.   On 22 Dec 11, [Plaintiff was] counseled for incorrect login of samples, specifically failing to log in with corresponding dates and times.
>
> d.   On 11 Jan 12, [Plaintiff was] counseled for not completing a critical pH into the CHCS computer system as directed, not cleaning up the bench, departing for lunch without completing an ER qualitative HCG, throwing out the wrong samples, mislabeling multiple tubes, and placing a sample type in the wrong processing area of the automation station.

e.     [Plaintiff was] counseled on 12 Mar 12 on [his]
tardiness on 11, 12, 13, and 17 Jan 12 and 16 Mar
12 (10 minutes late).

f.     [Plaintiff] received an unsuccessful performance
rating for the period 1 Jan 11 to 31 Dec 11.

Plaintiff had an opportunity to reply to Ms. Dotson's memorandum, but he did not

do so.  *See* Doc. No. 40-10, Def.'s Ex. 9 ("Notice of Decision on Proposed

Removal").

Major Jude Abadie, the head of Tripler's laboratory, subsequently

sustained Ms. Dotson's recommendation and terminated Plaintiff effective June 18,

2012.  *Id.*  Among other things, Major Abadie informed Plaintiff in writing that he

could "appeal [his] removal directly to the Merit Systems Protection Board

(MSPB) . . . no later than 30 days after the effective date of this action, or 30 days

after the receipt of this decision, whichever is later."  *Id.*

On July 23, 2012, Plaintiff completed a Pre-Complaint Intake

Interview with the Equal Employment Opportunity ("EEO") Office, U.S. Army

Garrison Hawaii, Schofield Barracks, Hawaii.  Doc. No. 40-11, Def.'s Ex. 10

("EEO Counselor's Report").  In his EEO interview, Plaintiff complained that he

was discriminated against because of his sex (Male) on two occasions: (1) "[w]hen

on 18 May 2012, [he] was not given the second opportunity for drug testing," and

(2) "[w]hen on 18 June 2012, [he] received his Notice of Termination through the mail while he was on leave." *Id.*

On July 28, 2012[3] -- forty days after Tripler terminated Plaintiff -- Plaintiff appealed his termination to the MSPB.  *See* Doc. No. 40-12, Def.'s Ex. 11 ("MSPB Decision") at 2.  Plaintiff's MSPB Appeal Form indicates that he "disagree[s] in which [sic] the way this positive result was reported" and that he "would like to demand a retest to reverse this positive illegal drug test finding." Doc. No. 40-13, Def.'s Ex. 12 ("MSPB Appeal Form"). That is, Plaintiff asserted that Tripler's error was relying on "[a] false positive result." *Id.* at RA-48. Notably, Plaintiff's MSBP Appeal was devoid of any allegations of discrimination.

On August 1, 2012, the EEO informed Plaintiff of his rights and responsibilities under the EEO's complaint process.  Among other things, the EEO instructed Plaintiff regarding "[t]he possible election requirement between a . . . MSPB procedure and the EEO complaint process."  Doc. No. 40-11, Def.'s Ex. 10

---

[3] Although the Introduction section of the MSPB's Initial Decision indicates that Plaintiff filed his appeal on July 29, 2012, Doc. No. 40-12, Def.'s Ex. 11 at 1, the Background and Analysis sections of the MSPB's Initial Decision indicate that Plaintiff filed his appeal on July 28, 2012. *Id.* at 2, 7 (categorizing Plaintiff's delay as a "10-day delay").  According to the time stamp submission date on the MSPB Appeal Form, Plaintiff submitted his appeal on July 29 at 1:54:45 a.m.  *See* Doc. No. 40-13, Def.'s Ex. 12 ("MSPB Appeal Form").  Whether Plaintiff appealed his termination on July 28 or July 29 makes no difference to this court's analysis; either way, Plaintiff missed his 30-day deadline.  The court will utilize the earlier of the two dates because, among other reasons, Defendant agrees that Plaintiff filed his appeal on July 28.  *See* Doc. No. 40, Def.'s CSF ¶ 20 ("On July 28, 2012[,] plaintiff appealed his removal to the MSPB.").

at 9.  The EEOC counselor was not able to resolve Plaintiff's complaint.  *Id.* at 11.

Accordingly, on September 1, 2012, the EEO conducted the final interview with

Plaintiff and provided Plaintiff with a Notice of Right to File a Formal Complaint

of Discrimination.  *Id.*  Plaintiff was also made "aware of the requirement to file a

formal complaint within **15 calendar days** of the final interview if not satisfied

with the results of [the EEO's] inquiry."  *Id.*

     On September 11, 2012, Plaintiff filed a formal EEO complaint.  Doc.

No. 40-15, Def.'s Ex. 14 ("6/12/13 Decision").  In contrast with Plaintiff's

previously-filed MSPB Appeal, Plaintiff asserted that he was the victim of

discrimination based on sex and age.[4]  *Id.*  The EEO ultimately concluded that

Plaintiff "was not the victim of discrimination."  *Id.*

     On September 27, 2012, the MSPB Administrative Law Judge

("ALJ") issued an Initial Decision finding that the MSPB had jurisdiction over

Plaintiff's appeal but dismissing it as untimely.  Doc. No. 40-12, Def.'s Ex. 11.

Although the Initial Decision disposed of Plaintiff's complaint on procedural

grounds, the ALJ attempted to accommodate Plaintiff prior to dismissing his

appeal.  Specifically, after the Army filed a motion to dismiss Plaintiff's appeal as

---

[4]  Plaintiff has not raised an age discrimination claim in his Amended Complaint in this court.

untimely, the MSPB ALJ issued an "Order on Timeliness" that "direct[ed] the appellant to submit evidence and argument to show cause why his appeal should not be dismissed as untimely, by showing that the appeal was in fact timely filed or that there was good cause for the filing delay." *Id.* at 137. Plaintiff's "response was due on September 4, 2012, and the record on the timeliness issue closed on September 11, 2012, with no response received from [Plaintiff]." *Id.* The next day, on September 12, 2012, the ALJ "reopened the record on the timeliness issue and advised the parties that, while . . . the appeal was filed 10 days late, it appeared that the removal decision notice did not include all of the required information regarding [MSPB] rights." *Id.* at 138. Accordingly, the ALJ "reminded the [Plaintiff] of his burden of proof on the timeliness issue and directed him to respond by September 21, 2012." *Id.* Plaintiff again said nothing. *Id.* In light of Plaintiff's silence, the ALJ "[found] no basis in the record to find the [Plaintiff] acted reasonably and with due diligence under the particular circumstances of his case." *Id.* at 142.

Plaintiff filed a request for reconsideration of the Initial Decision to the full MSPB and the MSPB issued a Final Order upholding the Initial Decision. Doc. No. 40-14, Def.'s Ex. 13 ("Final Order"). On June 9, 2014, the U.S. Court of

Appeals for the Federal Circuit affirmed the MSPB's Final Order.  *See Takeuchi v.*
*Merit Sys. Prot. Bd.*, 556 F. App'x 950 (Fed. Cir. 2014).

When Plaintiff filed his Amended Complaint with this court, he
asserted that he was treated differently than two female coworkers.   Doc. No. 12,
Am. Compl. at 2.   According to Plaintiff, "two female coworkers was [sic]
provided retests."  *Id.* at 3.   Plaintiff elaborated: "One female coworker approached
the plaintiff (Patrick Takeuchi) at the workplace emotionally distressed asking the
plaintiff if there was a reason she did not know about for taking a retest after
providing a specimen 5 days earlier.   Another female coworker also told the
plaintiff (Patrick Takeuchi) when asked in a personal conversation that she was
also retested."  *Id.*   Plaintiff identifies these two women as "coworkers" who were
"GS-7 series" employees "of similar status in employment" at Tripler.   Doc. No.
48, Plaintiff's Surreply at 3 ("Plaintiff's 'Reply' Brief").

**B.     Procedural Background**

Plaintiff filed his Complaint on July 2, 2014, Doc. No. 1, and filed an
Amended Complaint on October 31, 2014.  Doc. No. 12.

On August 26, 2015, Defendant filed the instant Motion.  Doc. No.
39.  Plaintiff filed his Opposition on September 22, 2015, Doc. Nos. 42 and 43, and

Defendant filed its Reply on September 29, 2015.  Doc. No. 45.  Plaintiff also filed

an "Optional Reply."  *See* Doc. Nos. 46 and 47.

Pursuant to Local Rule 7.2(d), the court finds the Motion suitable for

disposition without oral argument.

### III.  STANDARDS OF REVIEW

**A.     Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*,

521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as

true all of the allegations contained in the complaint -- "is inapplicable to legal

conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d

1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not

simply recite the elements of a cause of action, but must contain sufficient

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## B.   Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.

12

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV. DISCUSSION

Defendant first argues that this court should dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies. Next, Defendant argues that, even if this court does have jurisdiction, summary judgment is proper because Plaintiff cannot establish a prima facie case of sex discrimination or demonstrate that the Army's reason for terminating Plaintiff was not pretextual. The court addresses each argument in turn.

### A.   Jurisdiction

To establish federal subject matter jurisdiction of his Title VII claim, Plaintiff must first properly exhaust his administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). The Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101 *et seq.*, establishes a framework for evaluating adverse personnel actions against federal employees. Under the CSRA's statutory framework, an

13

aggrieved federal employee has a right to appeal the agency's decision to the MSPB, which serves as an independent adjudicator of federal employment disputes.   *See id.* at §§ 1204, 7512, 7701.   The MSPB has the jurisdiction to hear serious employment grievances that allegedly violate both internal agency policy as well as federal law.   Where an aggrieved federal employee wishes to charge the agency with discrimination prohibited by federal law, such as Title VII, the employee is asserting a "mixed case."   *See* 29 CFR § 1614.302 (2012).

Here, Plaintiff asserts that he was wrongfully discharged from his position with the Army because of his sex.   Plaintiff had two possible forums to grieve Tripler's adverse employment action: (1) file a "mixed case" appeal to the MSPB; or (2) file a "mixed" EEO complaint with the Army.   *See* 5 C.F.R. § 1201.151; 29 C.F.R. § 1614.103(a).   Significantly, however, "[a]n aggrieved person may initially file a mixed case complaint with an agency . . . or an appeal on the same matter with the MSPB pursuant to 5 CFR 1201.151, **but not both**."   5 C.F.R. § 1614.302(b) (emphasis added).   *See also Vinieratos v. United States*, 939 F.2d 762, 772 (9th Cir. 1991) ("The law requires an aggrieved federal employee to elect one exclusive administrative remedy and to exhaust whatever remedy he chooses.").   Thus, a plaintiff's choice of one forum is necessarily exclusive.

14

Here, Plaintiff chose to file an appeal with the MSPB (where he did not allege sex discrimination) and then subsequently file a second complaint with the EEO (where he raised his sex discrimination claim for the first time). This is not allowed. When Major Abadie terminated Plaintiff, he informed Plaintiff in writing that Plaintiff could appeal his removal to the MSPB or "**in the alternative**" to the agency. *See* Doc. No. 40-10, Def.'s Ex. 9 at 146 (emphasis added). Thus, when Plaintiff appealed his termination to the MSPB, Plaintiff was on notice that he elected the MSPB as his chosen forum.[5] At that juncture, Plaintiff could have lodged his discrimination claim before the MSPB, 5 C.F.R. § 1201.151, but he did not. Yet if a federal employee believes that discrimination is a component of an adverse personnel action, that issue must be raised from the outset in the employee's chosen forum. This is because:

> all claims should be ruled on at the same time in the same proceeding whenever possible. The various statutory provisions of the CSRA and its legislative history indicate a clear Congressional preference for combining various aspects of a single agency determination under

---

[5] Although Plaintiff contacted the EEO for "pre-complaint processing" before he filed his MSPB appeal, Plaintiff filed his MSPB appeal well before he filed his formal EEO complaint. Under the Federal Regulations, the "Pre-Complaint Processing" stage of the EEO program, 29 C.F.R. § 1614.105, is distinct from the "Individual Complaint" stage. *See* 29 C.F.R. § 1614.106. *See also Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001) (identifying 29 C.F.R. § 1614.105 and 29 C.F.R. § 1614.106 as distinct and sequential prerequisites a plaintiff must satisfy in order to exhaust his administrative remedies). Thus, Plaintiff's July 23, 2012 contact with the EEO was not an election of the EEO as his chosen forum.

> one review proceeding, both in the administrative and judicial channels.

*Toyama v. Leavitt*, 2009 WL 144323, at *4 (D. Haw. Jan. 21, 2009) (quotations, citations, and alterations omitted).  Thus, if Plaintiff believed that discrimination played a role in his termination, the law requires Plaintiff to raise the issue in the first instance (that is, with the MSPB) and not, as Plaintiff did here, at a later date and with a different administrative body (the EEO).  Put simply, Plaintiff was required to have both his discrimination claim and his improper termination claim decided in the forum he initially elected -- the MSPB.  Because Plaintiff did not include any discrimination claims in his initial appeal before the MSPB, Plaintiff failed to exhaust his administrative remedies as to his allegations of sex discrimination.  As such, Plaintiff cannot now seek review of his sex discrimination claim before this court.  Accordingly, this court is without jurisdiction to consider Plaintiff's Complaint.

The court fully understands the harshness of this result, particularly given Plaintiff's pro se status.  And so, in the interests of justice, the court next determines whether Plaintiff's claims could survive summary judgment if the court did have jurisdiction over his sex discrimination complaint.

///

///

16

**B.**   ***McDonnell Douglas* Analysis**

**1.**   ***Legal Framework***

Where, as here, there is no direct evidence of discriminatory intent,

Title VII discrimination claims are analyzed under the *McDonnell Douglas* burden-

shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973).[6]  First, the plaintiff must establish a prima facie case of discrimination.  *Id.*

at 802-04.  Toward that end, in order to establish a prima facie case, Plaintiff must

produce more than "purely conclusory allegations of alleged discrimination, with

no concrete, relevant particulars."  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599,

603 (9th Cir. 2004) (quotation marks and citation omitted).  Specifically, the

plaintiff must demonstrate that "(1) he is a member of a protected class; (2) he was

qualified for his position; (3) he experienced an adverse employment action; and

(4) similarly situated individuals outside his protected class were treated more

favorably, or other circumstances surrounding the adverse employment action give

rise to an inference of discrimination."  *Id.*  In order to be similarly situated, the

---

[6]  "[W]hen responding to a summary judgment motion . . . [the plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]."  *Metoyer v. Chassman*, 504 F.3d 919, 939 (9th Cir. 2007) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2007)).  The court proceeds under the *McDonnell Douglas* framework because the Defendant presents its arguments under this framework and Plaintiff does not argue to the contrary.

comparator employees must "have similar jobs and display similar conduct." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).  Although the employees need not be identical, they "must be similar in material respects."  *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011).

If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer a legitimate, non-discriminatory explanation for the challenged action.  *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009).  And, if the defendant proffers such a reason, the burden shifts back to the plaintiff to show that the defendant's reason is actually a pretext for discrimination. *Id.*

Notably, "a plaintiff's burden is much less at the prima facie stage than at the pretext stage."  *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010).  That is, circumstantial evidence of pretext must be specific and substantial,[7] *Becerril v. Pima Cty. Accessor's Office*, 587 F.3d 1162, 1163 (9th Cir.

---

[7] The Ninth Circuit has questioned whether a "specific and substantial" showing is proper for circumstantial evidence, especially where it has noted that this standard "is tempered by our observation that a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one." *See France v. Johnson*, --- F.3d ----, 2015 WL 5946421, at *5 (9th Cir. Oct. 14, 2015) (quoting *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011)); *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1030-31 (9th Cir. 2006). The Ninth Circuit has not, however, overruled this standard and has in fact suggested in other cases that "specific and substantial" evidence may be necessary for direct, as well as circumstantial, evidence. *See Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005).  The court therefore applies the "specific and substantial" standard to the present matter.

2009) (per curiam), and a plaintiff must do more than merely deny the credibility of the defendant's proffered reason.  *See Schueler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986).  "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez*, 349 F.3d at 641; *see also Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094-95 (9th Cir. 2005).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan*, 349 F.3d at 1095. "Circumstantial evidence . . . requires an additional inferential step to demonstrate discrimination." *Id.*

### 2.    *Application*

Even if Plaintiff could satisfy the first three prongs of a prima facie case, he fails to satisfy the fourth prong.  Specifically, Plaintiff identifies two female coworkers who allegedly had the opportunity to retest.  Even assuming, in the light most favorable to Plaintiff, that he was denied the opportunity to retest, Plaintiff has not established that his female coworkers were similarly situated. Viewing the evidence in the light most favorable to Plaintiff, there is no indication in the record that either of these two female coworkers "display[ed] similar conduct" to Plaintiff or were similar in "material respects."  That is, while Plaintiff

asserts that these two females were of "similar status" at Tripler, there is no

evidence that indicates what job positions and duties these two women held.  And

even assuming that these two females were employed in the same capacity as

Plaintiff, there is no evidence that either of these two females received substantial

counseling and were on a PIP, nor is there any indication that these female

coworkers **twice** tested positive for illegal drugs.  As such, the court concludes that

Plaintiff has failed to establish a prima facie case.

Even if Plaintiff had established a prima facie case, however, the court

would find that Plaintiff has not rebutted Defendant's legitimate,

nondiscriminatory reasons for its actions.  Under the *McDonnell Douglas* standard,

once an employee establishes a prima facie Title VII claim, the burden of

production shifts to the employer to articulate a legitimate, nondiscriminatory

reason for the adverse action.  *Boeing Co.*, 577 F.3d at 1049.  Here, Defendant's

legitimate, nondiscriminatory reason -- that Plaintiff failed two different drug tests

and was removed pursuant to Army Regulations -- satisfies this burden.

In light of this fact, it would be Plaintiff's burden of establishing that

the employer's stated reason was pretext.  To establish pretext, an employee "can

not simply show the employer's decision was wrong, mistaken, or unwise." *Dep't*

*of Fair Emp't. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011)

20

(internal quotation and citation omitted).  Once again, Plaintiff does not meet this burden.  Although Plaintiff asserts that the drug test produced a false positive and that he was wrongfully denied the opportunity to retest, Plaintiff nowhere offers specific and substantial evidence challenging the credibility of the employer's motives.  *Id.*  To the contrary, although Plaintiff claims that he was denied the opportunity to retest when he called the 1-800 number provided by Dr. Cooper, there is no evidence linking anything Plaintiff told either Dr. Cooper or the 1-800 number to the decisionmakers in Plaintiff's termination (*i.e.*, Ms. Dotson and Major Abadie).  That is, there is no evidence that either Ms. Dotson or Major Abadie knew of Plaintiff's request to retest.  Rather, the evidence suggests that Plaintiff chose not to take advantage of the opportunity to "stat[e] any and all reasons why the proposed removal action should not be effected."  Doc. No. 40-10, Def. Ex. 9.  As such, Plaintiff elected not to make Ms. Dotson and Major Abadie aware of his belief that his test results were improper.  Where, as here, the decisionmakers were unaware of the non-decisionmaker's allegedly discriminatory actions, Plaintiff must establish a nexus between the allegedly wrongful conduct and the adverse employment action.  *See, e.g., Vasquez*, 349 F.3d at 640 (requiring evidence of a nexus between non-decisionmaker's allegedly discriminatory decisions and adverse employment action).  Plaintiff has not satisfied this burden.

Because Plaintiff fails to rebut Defendant's nondiscriminatory explanation for his termination, he fails to create a triable issue of fact with respect to his discrimination claims.  Defendant's Motion is therefore GRANTED.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS the Motion.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 27, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Takeuchi v. McHugh*, Civ. No. 14-00299 JMS-KSC, Order Granting Defendant's Motion to Dismiss, Or in the Alternative, for Summary Judgment, Doc. No. 39